Bernard Ryan, P. J.
This suit for breach of contract against the New York State Thruway Authority originally demanded the sum of $164,363.88. Under date of August 15, 1958 a judgment was entered in favor of the claimant in the sum of $39,363.88 representing the amount admittedly due to claimant on the final estimate for the work performed under the terms of the contract. This judgment was recovered pursuant to an order of severance duly made and entered. Crediting the amount of the judgment left a balance due on the original demand in the amount of $125,000. The decision of this court upon which the order of severance and the judgment was entered directed that there be reserved until the trial of the remaining issues, the question of interest upon the said sum of $39,363.88. Interest upon that sum from August 16, 1957 to August 15, 1958 in the amount of $1,574.56 has been verified and that item of the claim is herein and hereby allowed.
At the opening of the trial claimant’s attorney stated that he expected to prove damages in excess of the aforesaid remaining sum of $125,000 indicated by the original pleadings, and that *1003 at the conclusion of the proofs he would move to amend the claim to conform. This intention he fulfilled. The total sum now demanded separately itemized in several requests to find amounts to $175,936.89. Our award will be considerably less for the reason that upon a review of the record we must disallow certain of the items.
It cannot be questioned that claimant was denied the site of its work through no fault of its own. However, not all of the expenses which claimant’s president asserts the corporation incurred, in excess of its estimates of what it would have cost to perform the contract, can be recovered. In our view and judgment they cannot properly be charged to the delays encountered by claimant when it sought access to the rights of way of the three railroads which traversed the site of its work. Over these three railroad rights of way claimant contracted to construct two separate bridges, each intended to carry Thruway traffic, one for the eastbound and one for the westbound-pavement lane.
The details of claimant’s problem in getting at the site are set forth in those requests to find which we have marked found and which we accordingly adopt as a record of the facts in this case. We also find as a fact that claimant prepared and submitted a proposed progress schedule which contemplated the completion of the contract work by November 15, 1956. That was the completion date specified in the contract document.
We do not adopt as a finding claimant’s request that its proposed plan and schedule of operations was reasonable. We do not find that under its proposed plan of operations claimant could have completed the work by the completion date. That claimant had available sufficient men and equipment to properly perform the job it undertook in accordance with good construction practices is not denied. The work was done and accepted by the defendant.
However, a study of the record of the trial, including both the testimony and the exhibits offered in evidence, has not convinced us that claimant’s theory was practicable. Its president proposed that he would put his labor forces and his machinery upon the job site early in October, 1955, immediately commence work on the foundation and columns for the bridge piers and, simultaneously, commence work on tie Swede Creek box culverts. He further proposed to place the embankments for the bridge approaches as soon as the sites became available and to carry on such work during the Fall until such time as the weather conditions and the approaching Winter made it impracticable *1004 to proceed, economically. Claimant would then, Mr. Baughman asserts, have discontinued operations until the Spring of 1956.
The Swede Creek area may have been dry in October, 1955, as claimant’s president testified he saw it at that time when he visited the site and bid the contract. But it seems to us that Mr. Baughman, being familiar with climatic and weather conditions in Western New York, should reasonably have anticipated that November and December, and the Spring months as well, would present him with complications which would interfere with the progress of his work. Indeed the record discloses that was exactly what happened. As the twin-box culverts were to carry a live stream the installation of drainage outlets was the first order of business. The twin-box culverts were to be placed in a ravine at an elevation at least 50 feet below the level of the bridge approach. Over them, according to the contract plans, a large fill was to be placed. This fill would support the approaches to the bridge from the west. A plan of operation which would postpone for six months or longer (Nov. to May) this preliminary work in a large construction contract which called for completion within 13 months does not appeal to us as being reasonable.
Therefore, upon the foregoing considerations, we disallow the sums claimed for clearing and grubbing in the amount of $4,252.93; for excess costs of trench culvert and bridge excavation in the amount of $13,066.18; for delays attendant upon trench, culvert and bridge excavation in the amount of $16,796.80; for $68,773.23 claimed as the increased cost of contract item 18; and for the alleged extra cost of installing the run of bank gravel under item 119X in the amount of $7,646.47. These several items, each disallowed, all hinge upon the Swede Creek operation.
As we stated at the outset claimant was not given a free site for its work promptly after the execution of the contract. Yet the engineer who represented the defendant and who was in charge of the work required claimant to keep all of its equipment on the job site during the Winter months, although such equipment was idle. The defendant called no witnesses to dispute the testimony proffered by the claimant as to the fair and reasonable rental value of such equipment and as the computations presented by the claimant are not contested, we make an award in the amount of $17,592.25 on Bequest 60 and in the amount of $22,129.75 on Bequest 61.
The pile-driving item must be disallowed. Claimant contracted to drive the sheeting on the No. 1 piers to the depth of six feet nine inches below the bottom of the pier foundations. *1005 There has been presented no proof either of misrepresentation, of fraud, of mutual mistake, or of the fraud of one party and the mistake of the other. Nor do other extenuating* circumstances appear, to relieve claimant from performance. The fact that resistance to the pile driving was met at a certain depth at pier No. 1 and that, ultimately, the defendant’s engineers permitted claimant to drive to a lesser elevation when it came to the operation at pier No. 2 does not support a finding of an unreasonable demand by the defendant in respect to pier No. 1. (Cameron-Hawn Realty Co. v. City of Albany, 207 N. Y. 377, 382 [1913].)
Claimant applied for and received three extensions of the time to complete its contract. As a result the time of completion was extended to September 1, 1957. Actual completion was on August 16,1957, nine months beyond the completion date originally stipulated. Each application for extension gave as the reasons for the request the following: ‘ ‘ Due to the inclement Spring weather, delay in delivery of steel, and delay in negotiations of Agreements between New York State Thruway Authority and the Railroad Companies, all of which considerably retarded progress of the project.”
The last extension contained a proviso that after July 1, 1957 engineering and inspection charges be assessed against claimant. We find that the claimant should not be required to pay the engineering and inspection charges which were deducted from its final payment. The amount thereof was $148.81 for which claimant should be reimbursed.
Claimant seeks to recover $20,035.09 for miscellaneous expenses resulting from the delays caused by failure to have the railroad sites promptly (Request 75). This sum is computed on a total claimed delay of nine months. We assess a period of five and one-half months against the actions of the defendant and arrive at a proportional allowance for this item in the sum of $12,243.66.
Our award in the above-entitled claim is summarized as follows:
Request No. 60.............. $17,592.25
Request No. 61.............. 22,129.75
Request No. 75.............. 12,243.66
Request No. 76.............. 148.81
Request No. 77.............. 1,574.56
Total.... $53,689.03
*1006 The claimant is entitled to recover the sum of $53,689.03, together with interest upon $52,114.47 from August 16,1957 and upon the sum of $1,574.56 from August 15, 1958 to the date of entry of judgment herein. All other items of the claim are dismissed.